PUBLISHED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **FEDERAL INSURANCE COMPANY**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:05CV00004 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **THE NEW COAL COMPANY, INC.,** | ) | By: James P. Jones |
| **ET AL.,** | ) | Chief United States District Judge |
| Defendants. | ) | |
| | ) | |

*Jeffrey R. Schmieler and William E. Hutchings, Jr., Saunders & Schmieler, P.C., Silver Spring, Maryland, for Plaintiff; Curtis G. Power, III, and Amanda McDonald Wiseley, Bowles Rice McDavid Graff & Love, LLP, Winchester, Virginia, and Spencer D. Noe, Bowles Rice McDavid Graff & Love, LLP, Lexington, Kentucky, for Defendants.*

In this declaratory judgment action applying Virginia insurance law, the issue is the proper interpretation of an automobile exclusion endorsement to a commercial liability insurance policy. Construing the plain language of the exclusion, I find that there is no liability coverage for a lawsuit claiming that the insureds negligently overloaded a non-owned coal truck, which negligence allegedly contributed to cause a motor vehicle accident.

I

The present dispute concerns a commercial liability insurance policy entitled Energy Industries General Liability Insurance (the "Policy"), issued by the plaintiff Federal Insurance Company ("Federal") to the defendants The New Coal Company, Inc.[1] ("New Coal") and J.A.D. Coal Company, Inc. ("J.A.D."). New Coal and J.A.D. have been sued in tort in a state court for wrongful death and personal injuries following a motor vehicle accident, and Federal maintains that it is not obligated to provide coverage for any claims arising out of the accident because of a so-called Additional Auto Exclusion contained in an endorsement to the Policy.[2]

In the underlying tort action, pending in Clay Circuit Court, Kentucky (the "Kentucky Action"), it is asserted that on March 12, 2004, a tractor-trailer truck driven by Raymond G. Walker crossed the centerline of a Kentucky highway and struck an on-coming military Humvee driven by Kentucky National Guardsman Glenn Scott Stanfill. Glenn Scott Stanfill died as a result of the accident, and his son and passenger Joshua S. Stanfill sustained personal injuries. The complaint in the

---

[1] This defendant is referred to in the Policy as The New Coal Co., Incorporated.

[2] The portion of the endorsement in question is entitled "Additional Exclusion." (Endorsement Form No. 42-02-0165 (ed. 11-90) at 1.) The parties have referred to this provision as the "Additional Auto Exclusion" and for convenience I will follow that designation.

Kentucky Action contends that the accident was the result of both (1) the negligent operation of the truck by Walker, its driver, and (2) the negligent overloading of the truck by employees of New Coal and J.A.D. The driver Walker was not an agent or employee of New Coal or J.A.D., and the truck driven by him was not owned by them.

Federal filed this action seeking a declaration that it does not have a duty to defend or indemnify New Coal or J.A.D. because of the Policy's Additional Auto Exclusion.[3] The defendants have counterclaimed, seeking a declaration that there is coverage under the Policy and thus a duty by Federal to defend and indemnify them. The parties are agreed that there are no genuine issues of material fact presented in the case and that the Complaint and Counterclaim can be determined on the present record and the parties' cross motions for summary judgment.

II

Federal courts sitting pursuant to their diversity jurisdiction must apply the law of the forum state, which here is Virginia. *See Erie R.R. v. Tompkins*, 304 U.S. 64,

---

[3] The action was initially filed in the United States District Court for the Eastern District of Virginia and venue was thereafter transferred to this court. Subject matter jurisdiction is proper pursuant to diversity of citizenship and amount in controversy. *See* 28 U.S.C.A. § 1332(a) (West 1993).

- 3 -

78 (1938). Under Virginia's choice of law rules, an insurance policy, like other contracts, must be applied and interpreted in accordance with the law of the state in which it was made. *Lexie v. State Farm Mut. Auto. Ins. Co.*, 469 S.E.2d 61, 63 (Va. 1996). Because the Policy was delivered in Virginia, I must apply Virginia law to determine the issues in this case. *See Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 636 (4th Cir.), *cert. denied*, 126 S. Ct. 568 (2005). In order to determine state law, a federal court must follow the decisions of the state's highest court, or, where the law is unclear, predict how that court would rule, based on "canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions," among other things. *Wells v. Liddy,* 186 F.3d 505, 528 (4th Cir. 1999).

Under Virginia law, it is clear that "an insurer's obligation to defend is broader than its obligation to pay, and arises whenever the complaint [against the insured] alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." *Lerner v. Gen. Ins. Co. of Am.*, 245 S.E.2d 249, 251 (Va. 1978). Thus, an insurer may be obligated under a valid policy to mount a defense on its insured's behalf even when the ultimate resolution of the case indicates that there is no duty to indemnify. *See Fuisz v. Selective Ins. Co. of Am.*, 61 F.3d 238, 242 (4th

- 4 -

Cir. 1995). However, where the record is clear that an insurer is excused from providing coverage under the provisions of its policy for any possible judgment based on the allegations, no duty to defend may be found. *Town Crier, Inc. v. Hume*, 721 F. Supp. 99, 102 (E.D. Va. 1989).

In determining whether an insurance company is excused from providing coverage under its policy, Virginia applies the basic principles of contract interpretation. Thus, "a court must adhere to the terms of a contract of insurance as written, if they are plain and clear and not in violation of law or inconsistent with public policy" and it is not a court's "function to 'make a new contract for the parties different from that plainly intended and thus create a liability not assumed by the insurer.'" *Blue Cross & Blue Shield v. Keller*, 450 S.E.2d 136, 140 (Va. 1994) (quoting *Pilot Life Ins. Co. v. Crosswhite*, 145 S.E.2d 143, 145 (Va. 1965)). Where insurance policies are "clear and unambiguous, their terms are to be taken in their plain, ordinary and popular sense." *Gov't Employees Ins. Co. v. Moore*, 580 S.E.2d 823, 828 (Va. 2003). However, an insurance policy is ambiguous where it can reasonably have more than one meaning given its context, and such ambiguities are to be resolved against the insurer and in favor of coverage. *Hill v. State Farm Mut. Auto. Ins. Co.*, 375 S.E.2d 727, 730 (1989). Similarly, reasonable exclusions to coverage, when stated in the policy in clear and unambiguous language that is clearly

applicable to a specific situation at hand, will be enforced. *Transcon. Ins. Co. v. RBMW, Inc.*, 551 S.E.2d 313, 318 (Va. 2001). Where exclusionary provisions are ambiguous, they will be interpreted in a manner that provides coverage. *Lower Chesapeake Assocs. v. Valley Forge Ins. Co.*, 532 S.E.2d 325, 331-32 (Va. 2000).

The Policy obligates Federal to "pay those sums that the insured becomes legally liable to pay as damages because of bodily injury" and "to defend any suit seeking those damages." (Policy 1.) It is thus undisputed that the Policy, absent the Additional Auto Exclusion, would provide coverage for the defendants with regard to the Kentucky Action. Therefore, the sole issue before me is the applicability of the Additional Auto Exclusion to the facts at hand. The Additional Auto Exclusion states as follows:

> This insurance does not apply to bodily injury or property damage arising out of the ownership, maintenance, or use of any auto, by the insured or any other person or organization. Use includes operation, and loading or unloading.
>
> This exclusion does not apply to:
>
> a.  Parking an auto on, or on the ways next to, premises you own or rent, provided the auto is not owned by or rented or loaned to you or the insured;
>
> b.  Bodily injury or property damage arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of mobile equipment (Section V.8).

- 6 -

Case 2:05-cv-00004-JPJ-PMS   Document 99   Filed 02/16/06   Page 6 of 16   Pageid#: 768

All Other Terms and Conditions Remain Unchanged.

(Endorsement 1.) "Auto" is defined elsewhere in the Policy as "a land motor vehicle, trailer or semitrailer designed for travel on public roads . . . ." (Policy 13.)

The Policy contains another auto exclusion, set forth in the general exclusions section, which states that the Policy does not apply to

> [b]odily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and loading or unloading.

(Policy 3.) Federal does not contend that this exclusion applies here, since it is clear that the truck in question was not owned by New Coal or J.A.D., or otherwise operated, rented or borrowed by them.

Federal maintains that the Additional Auto Exclusion applies to the factual situation at hand and excludes coverage because the Kentucky Action is based on Raymond Walker's use of the coal truck and thus arose "out of the . . . use of any auto, by . . . any other person." According to Federal, the plain language of the exclusion provides that it is not limited to the use of an auto by the insured only. Federal argues that the exclusion's phrase "any other person" means strangers to the insurance contract and includes Walker. Federal further argues that Walker's driving constituted "use," as that term is not limited in meaning by the examples of

- 7 -

operation, loading, and unloading set forth in the exclusion. Lastly, Federal contends that the death and bodily injuries alleged in the Kentucky Action "aris[e] out of" Walker's operation of the truck because they are alleged to have resulted from an accident involving the Humvee operated by Glenn Stanfill and the truck operated by Walker.

To the contrary, New Coal and J.A.D. contend that the Additional Auto Exclusion is inapplicable. First, they maintain that the exclusion's phrase "any other person" is ambiguous because "any person" also appears in Section II of the policy, entitled "Who is an Insured." (Policy 8.) In light of this alleged ambiguity and pursuant to the doctrine of *contra proferentem*, the defendants contend that "any other person" must be construed in their favor to include only "any person" as identified in Section II. They claim that such a construction would not include the driver Walker. The defendants also argue that Walker's driving of the truck did not constitute "use" of an "auto." To support this argument, defendants note that "use" is defined under the policy as including "operation, and loading or unloading," and argue that the truck was not being "operated" as the term "operation" is utilized in the Additional Auto Exclusion because the exclusion only utilizes the term "operation" in connection with mobile equipment.

- 8 -

Next, the defendants note that the test for whether an injury arises out of the use of an auto is not whether the use of an auto was a "but for" cause, but rather whether "the chain of events resulting in the accident was unbroken by the intervention of any event unrelated to the use of the vehicle." *Erie Ins. Co. Exch. v. Jones*, 448 S.E.2d 655, 658 (Va. 1994). According to New Coal and J.A.D., the overloading of the truck constituted an intervening event unrelated to the use of the vehicle and precludes a finding that the injuries in the Kentucky Action resulted from the use of an auto.[4]

The defendants further argue that even if the overloading does not constitute an intervening event, it is nonetheless an additional cause not excluded from coverage. They contend that in such a case of multiple causes, an insurer must provide coverage despite the fact that one of the two causes fits an exclusion.

Lastly, New Coal and J.A.D. argue that the insurance company's proffered interpretation of the Additional Auto Exclusion renders the phrase "by the insured or any other person or organization" mere surplusage, in contravention of traditional principles of contract interpretation.

---

[4] It is not contended by Federal that the alleged overloading of the truck constituted a "use" under the Additional Auto Exclusion, perhaps because "loading or unloading" is defined in the Policy to exclude loading or unloading by means of a mechanical device "that is not attached to the . . . auto." (Policy 14.)

- 9 -

Having carefully reviewed the Policy's terms and the pertinent authorities, I agree with Federal's interpretation of the Additional Auto Exclusion and find that there is no coverage under the Policy for the claims alleged in the Kentucky Action. First, I agree with Federal's argument that the phrase "any other person" as it appears in the Additional Auto Exclusion means a stranger to the insurance contract. The defendants' contention that the phrase "any other person" is synonymous with an insured simply because the phrase "any person" appears in Section II of the Policy defining an insured is without merit. The phrase "any person" is used in Section II in conjunction with various explanatory phrases to explain exactly what persons are considered insureds under the Policy. The statement in that section that an insured includes "[a]ny person . . . while acting as your real estate manager" (Policy 8), for example, does not define the phrase "any person" nor indicate that the phrase standing alone is synonymous with an insured. The Additional Auto Exclusion provides that coverage "does not apply to bodily injury . . . arising out of the . . . use of any auto, by the insured <u>or</u> any other person or organization." (Endorsement at 1 (emphasis added).) The use of the word "or" between "insured" and "any other person" indicates an alternative. Thus, under the plain meaning of the exclusion's terms, the phrase "any other person" plainly means a stranger to the insurance contract and includes the driver Walker. The contention that such an interpretation

would render the entire phrase "by the insured or any other person or organization" mere surplusage is misplaced, as this phrase simply serves to clarify the situations in which the exclusion applies.

Secondly, I find that Walker's driving clearly constituted a "use" of an "auto." The exclusion states that "use includes operation, and loading or unloading." (Endorsement 1.) While the term "operation" is not specifically defined within the Policy, driving a vehicle is plainly understood as the operation of a vehicle. Contrary to the defendants' contention, the fact that the only other place "operation" appears in the exclusion is in connection with mobile equipment is irrelevant. Furthermore, by stating that the term use "includes" operation, loading and unloading, the Policy does not limit the meaning of "use" to those three activities alone. Under general principles of insurance law, "[t]he term 'use' is the general catch-all . . . designed and construed to include all proper uses of the vehicle not falling within one of the previous terms of definition," which here are ownership and maintenance. 6B Appleman on Insurance Law and Practice § 4316, at 341-42 (Richard B. Buckley ed. 1979). Thus, "use" in the Additional Auto Exclusion includes any activity generally associated with the purpose of an auto that is not ownership or maintenance. Therefore, it is clear that Walker's driving of the truck at the time of the accident alleged in the underlying Kentucky Action both falls within the common

understanding of the meaning of "operation" and would otherwise be considered a "use" of the vehicle.

Finally, I find that the injuries alleged in the underlying Kentucky Action "aris[e] out of" Walker's use of the truck. Under Virginia law, the issue of whether the accident arose out of the use of the truck is determined by principles announced in *State Farm Mut. Auto. Ins. Co. v. Powell*, 318 S.E.2d 393, 397 (Va. 1984). In *Powell*, the court considered whether a death resulting from the discharge of a shotgun resting in a gun rack affixed to a pickup truck arose out of the "use" of the vehicle. *Id*. at 394. The driver of the truck and a passenger drove to a park where they met three of their friends. *Id*. The two remained in the truck while conversing with their friends who were standing around the vehicle. *Id*. One friend opened the passenger side door and sat on the side of the passenger's seat. *Id*. Without explanation, the shotgun resting in the rack on top of the truck discharged and killed one of the individuals standing outside the passenger side of the truck. *Id*. In concluding that this death did not arise out of the use of the vehicle, and that the accident was therefore not excluded from the homeowner insurance policy which included an exclusion for injury "arising out of the ownership, maintenance, operation, use, loading or unloading of . . . any motor vehicle owned . . . by . . . any insured," the court set forth the following principles:

- 12 -

> Even though ownership, maintenance, or use of the vehicle need not be the direct, proximate cause of the injury in the strict legal sense, nevertheless, there must be a causal relationship between the accident and employment of the . . . motor vehicle as a vehicle. . . . Furthermore, consideration must be given to what the injured person was doing when he was injured, as well as his purpose and intent, in determining whether that person was in such position in relation to the vehicle to be injured in its "use."

*Id*. at 395, 397.

Applying these principles to the facts in that case, the court in *Powell* reasoned that the fact that the injury-causing gun was permanently affixed to the truck did not mandate a finding that the incident arose out of the use of the truck. *Id*. at 398. The court further noted that the truck was merely the situs for a social gathering "equivalent to a park bench, a picnic shelter, a tent, or a shed" and that the victim had only a remote connection to the truck. *Id*. Thus, the court concluded that the requisite causal relationship between the accident and the employment of the truck as a vehicle was lacking. *Id*.

The facts of this case are clearly distinguishable from those in *Powell* and mandate a finding that the necessary causal relationship exists. Consideration must be given both to the status of the victim and the relationship between the incident and the use of the vehicle as a vehicle, although neither factor alone is dispositive on whether the injury arises out of the vehicle's use. *See State Farm Mut. Auto. Ins. Co.*

- 13 -

*v.Bright*, 850 F. Supp. 493, 496-97 (W.D. Va. 1994). Here, the Stanfills were traveling in a vehicle on a public roadway when Walker, also traveling in a vehicle on the same highway, lost control of his truck around a curve and collided with their vehicle. Because the Stanfills were both passengers in a vehicle on the same roadway with the truck and because the accident causing their injuries was the direct result of the use of the two vehicles as vehicles, a causal relationship is established.

New Coal and J.A.D. argue that the overloading of the truck constituted a separate, non-excluded cause, but the state trial court opinion in *Progressive Am. Ins. Co. v. Starling*, 57 Va. Cir. 110 (2001), is persuasive to me on this issue.

In *Starling*, the sole proprietor of a tree removal and trimming business, Starling, fashioned a rope and pulley system to exert force on a tree during removal in order to prevent the tree from falling onto a residence. *Id*. at 110. The rope was connected to a ball hitch on Starling's truck, run through a pulley, and tied to the tree. *Id*. Starling was operating the truck intending to pull the tree away from the house as it began to fall, and as he pulled forward the rope struck the crew member who was directing him. *Id*. The crew member fell and suffered significant injuries as a result. *Id*.

The crew member filed suit against Starling, alleging that Starling both negligently planned and executed the operation and negligently operated his truck,

- 14 -

thereby causing the crew member's injuries. *Id*. at 111. At the time of the accident, the dump truck owned by Starling's tree service business was covered by a business auto insurance policy and the tree service business itself was covered by a commercial general liability policy. *Id*. The carrier of the commercial general liability policy argued that it was not liable for any injuries sustained by the crew member because its policy contained several exclusions including an automobile exclusion. *Id*. at 113-14. The crew member argued that the exclusion should not apply because the complaint alleged that Starling was negligent in arranging, planning, conducting, and supervising the cutting of the tree, which had nothing to do with the operation of the truck. *Id*. at 114.

The court noted that "[w]hile all of these acts [of arranging, planning, and supervising the cutting] could have been negligently carried out, but for the use of the vehicle, plaintiff would never have been injured." *Id*. The court then held that applying the principles set forth in *Powell* and giving the terms of the exclusion their ordinary meaning, it was clear that the exclusion applied to preclude coverage. *Id*. at 115. Similarly, in the instant case, it was the use of the truck that caused death and injuries to the Stanfills. Like the negligent planning and supervision in *Starling*, the alleged overloading alone would not have caused this result. Thus, I find that the

- 15 -

claims in the Kentucky Action arose out of the use of the truck by Walker and that the Additional Auto Exclusion is applicable.

IV

For the foregoing reasons, Federal's Motion for Summary Judgment will be granted, and the Motion for Summary Judgment by New Coal and J.A.D. will be denied. I will enter a judgment in Federal's favor declaring that the Policy does not provide coverage for the accident described in the Kentucky Action and thus Federal has no duty to indemnify or defend New Coal or J.A.D.[5]

DATED: February 16, 2006

/s/ JAMES P. JONES
Chief United States District Judge

---

[5] Also before the court are Federal's Motion for Leave to Amend its Statement of Facts Not in Dispute, Federal's Motion to Exclude Defendant's Expert Witness, and New Coal's and J.A.D.'s Motion to Consolidate Cases. I deny the motion to amend as moot. I will grant the motion to exclude the expert, because the issue in this case is one of contract interpretation and thus expert testimony is not appropriate. *See Forrest Creek Assocs., Ltd. v. McLean Sav. & Loan Ass'n*, 831 F.2d 1238, 1242 (4th Cir. 1987) (explaining that contract "interpretation is a matter of law" and concluding that "the district court was correct in excluding expert testimony proffered . . . for the purpose of interpreting" the clause at issue). With regard to the motion to consolidate, New Coal and J.A.D. request that this case be consolidated with another case pending in this court, Allstate Insurance Company v. J.A.D. Coal Company, Inc., No. 2:05CV00029, in which another insurance company seeks a declaratory judgment that it has no duty to defend the Kentucky Action under a different insurance policy. Because I find that the two cases involve different issues of law, I deny this motion. *See* Fed. R. Civ. P. 42(a).